UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSHUA MAZER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 21-01782 (TNM)** |
| **D.C. DEPARTMENT OF HEALTH,** *et al.*, | |
| **Defendants.** | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants the District of Columbia Department of Health, LaQuandra Nesbitt, and Muriel Bowser (collectively, the District) oppose plaintiff's motion for a preliminary injunction and move to dismiss plaintiff's Complaint with prejudice. *See* July 13, 2021 Minute Order; Fed. R. Civ. P. 12(b)(1); LCvR 65.1(c); Fed. R. Civ. P. 12(b)(6).

Plaintiff, a Maryland resident and father, challenges the District's Minor Consent for Vaccinations Amendment Act of 2020 (the Act), D.C. Law 23-193, 68 D.C. Reg. 4172 (Apr. 23, 2021), which permits minors, in some circumstances, to consent to receive certain vaccines. Plaintiff alleges that the law violates the National Childhood Vaccination Injury Act of 1986, 42 U.S.C. §§ 300aa-1 *et seq.*, due process, the Religious Freedom Restoration Act and the Free Exercise Clause of the First Amendment. In essence, plaintiff alleges that the Act constitutes an unconstitutional interference in his relationship with his 16-year-old daughter, and an unconstitutional burden on religious beliefs that prevent him from vaccinating his children or providing consent on their behalf. But the law is an eminently reasonable public health measure

that does not require plaintiff or his daughter to do anything.

As set forth in the accompanying memorandum of points and authorities, plaintiff is not entitled to injunctive relief, and dismissal is appropriate because plaintiff lacks standing and fails to state a claim upon which relief can be granted. Plaintiff has not shown or alleged that his child received, or certainly and imminently will receive, a vaccine under the Act. Thus, he cannot show he has been injured by the Act. And even if he had standing, he cannot show that the Act violates plaintiff's constitutional or statutory rights because it does not impose any—let alone unconstitutional—interference or burdens. As a result, plaintiff's motion for a preliminary injunction should be denied, and the Complaint should be dismissed with prejudice. A proposed order is attached.

Dated:  July 30, 2021.          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Acting Deputy Attorney General
Public Interest Division

*/s/ Andrew J. Saindon*
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
PAMELA DISNEY [1601225]
MATEYA B. KELLEY [888219451]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W.
Suite 10100
Washington, D.C. 20001
(202) 724-6643
andy.saindon@dc.gov

*Counsel for Defendants*

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOSHUA MAZER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 21-01782 (TNM)** |
| **D.C. DEPARTMENT OF HEALTH,** *et al.*, | |
| **Defendants.** | |

**DEFENDANTS' MEMORANDUM**
**OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**Table of Contents**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

   I.  The National Childhood Vaccine Injury Act of 1986 ......................................... 2

   II.  The Minor Consent for Vaccinations Amendment Act of 2020 ......................... 3

   III. Plaintiff's Allegations..................................................................................... 4

   IV. Procedural History.......................................................................................... 4

LEGAL STANDARD.......................................................................................................... 5

   I.  Motion to Dismiss for Lack of Subject Matter Jurisdiction................................ 5

   II.  Preliminary Injunction....................................................................................... 5

   III. Motion to Dismiss for Failure to State a Claim.............................................. 6

ARGUMENT ....................................................................................................................... 6

   I.  Plaintiff's Claims Must Be Dismissed Because He Lacks Standing.................... 6

   II.  Plaintiff Is Not Entitled to a Preliminary Injunction. ..................................... 10

     A.  Plaintiff Cannot Show He Has Standing With Competent Evidence............................ 10

     B.  Plaintiff Is Not Likely To Succeed on the Merits of Any of His Claims...................... 12

       1.  The Act Is Not Unconstitutional In All Its Applications............................. 12

       2.  Plaintiff Cannot Succeed on His Supremacy Clause Claim Because There Is No "Conflict" with Federal Law........................................................................... 13

       3.  Plaintiff Cannot Succeed on His Substantive Due Process Claim Because the Act Does Not Deprive Him of a Liberty Interest or Fundamental Right; Alternatively, It Is Narrowly Tailored To Serve a Compelling State Interest, and Survives Rational Basis Review. .............................................................................................. 19

         a.  The Act Does Not Infringe On Any Liberty or Right.............................. 19

         b.  The Act Is Narrowly Tailored To Support a Compelling Governmental Interest And Therefore Also Survives Rational Basis Review. .................................. 24

       4.  Plaintiff Cannot Succeed on His Procedural Due Process Claim.............................. 27

       5.  Plaintiff Cannot Succeed on His RFRA Claim Because Enforcement of the Act Is Not a Substantial Burden on Plaintiff's Religious Conduct. ........................... 29

       6.  Plaintiff Cannot Succeed on His Claim Under the Free Exercise Clause Because the Act Has Not Imposed a Substantial Burden on Plaintiff's Religious Exercise. ............... 32

     C.  Plaintiff Will Not Suffer Irreparable Harm Absent Relief Because He Has Not Shown He Is Likely To Suffer any Injury. ................................................................. 33

     D.  The Balance of the Equities and the Public Interest Weigh in Favor of the District. .... 35

III.  The District Is Entitled to Dismissal on All Claims Under Rule 12(b)(6). ........................ 36

CONCLUSION................................................................................................................... 37

## Table of Authorities

**Cases**                                                                              **Page(s)**

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) ........................................................................... 5

*Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*,
   495 F.3d 695 (D.C. Cir. 2007) (*en banc* ............................................................ 19

*Air Transp. Ass'n of Am., Inc. v. Export-Import Bank of the U.S.*,
   840 F. Supp. 2d 327 (D.D.C. 2012) .................................................................... 35

*al-Aulaqi v. Obama*,
   727 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................ 24

*Allied Tube & Conduit Corp. v. Indian Head*,
   486 U.S. 492 (1988) ............................................................................................ 36

*American Academy of Pediatrics v. Heckler*,
   561 F. Supp. 395 (D.D.C. 1983) ......................................................................... 20

*Anspach v. City of Philadelphia*,
   503 F.3d 256 (3d Cir. 2007) .........................................................................Passim

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
   281 F. Supp. 3d 88 (D.D.C. 2017) ................................................................ 29, 32

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
   897 F.3d 314 (D.C. Cir. 2018) ........................................................................... 33

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
   570 U.S. 1 (2013) ................................................................................................ 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 6, 37

*Atascadero State Hosp. v. Scanlon*,
   473 U.S. 234 (1985) ............................................................................................ 15

*Bakker v. Welsh*,
   108 N.W. 94 (1906) ............................................................................................ 21

*Barnes v. Glen Theatre*,
   501 U.S. 560 (1991) ............................................................................................ 15

*Bd. of Regents v. Roth*,
   408 U.S. 564 (1972) ............................................................................................ 27

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 6, 36

*Bin Lep v. Trump*,
   2020 WL 7340059 (D.D.C. Dec. 14, 2020) ...................................................... 34

*Black Lives Matter D.C. v. Trump*,
   2021 WL 2530722 (D.D.C. June 21, 2021).......................................................... 9

*Bonito Boats v. Thunder Craft Boats*,
   489 U.S. 141 (1989) ............................................................................................ 18

*Bonner v. Moran*,
   126 F.2d 121 (D.C. Cir. 1941)....................................................................... 20, 21

*Bruesewitz v. Wyeth LLC*,
   562 U.S. 223 (2011) .................................................................................. 2, 15, 25

*California v. Texas*,
  141 S. Ct. 2104 (2021)...................................................................................... 7, 10

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006)........................................................................ 6, 34

*City of Boerne v. Flores*,
  521 U.S. 507 (1997) ............................................................................................. 29

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
  58 F.3d 738 (D.C. Cir. 1995)................................................................................ 34

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................................... 7, 9

*Commissions Imp. Exp. S.A. v. Republic of the Congo*,
  757 F.3d 321 (D.C. Cir. 2014).............................................................................. 14

*Ctr. for Law and Educ. v. Dep't of Ed.*,
  396 F.3d 1152 (D.C. Cir. 2005)............................................................................ 10

*Davis v. Billington*,
  76 F. Supp. 3d 59 (D.D.C. 2014).......................................................................... 34

*Davis v. Pension Benefit Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009).............................................................................. 6

*Doe v. District of Columbia*,
  796 F.3d 96 (D.C. Cir. 2015)........................................................................... 27, 28

*Doe v. Irwin*,
  615 F.2d 1162 (6th Cir. 1980) ........................................................................ 24, 30

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997)................................................................................ 6

*Exxon Corp. v. Governor of Maryland*,
  437 U.S. 117 (1978) ............................................................................................. 19

*Fernandez v. Mukasey*,
  520 F.3d 965 (9th Cir. 2008) ............................................................................... 31

*Food & Water Watch, Inc. v. Vilsack*,
  79 F. Supp. 3d 174 (D.D.C. 2015)........................................................................ 11

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015)........................................................................ 11, 12

*Ghadami v. D.H.S.*,
  2020 WL 1308376 (D.D.C. Mar. 19, 2020) .......................................................... 24

*Goings v. Court Servs. and Offender Supervision Agency*,
  786 F. Supp. 2d 48 (D.D.C. 2011)........................................................................ 22

*Gonzales v. Carhart*,
  550 U.S. 124 (2007) ............................................................................................. 36

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013)........................................................................ 19, 27

*Gruenke v. Seip*,
  225 F.3d 290 (3d Cir. 2000) ................................................................................. 22

*Hallie v. Eau Claire*,
  471 U.S. 34 (1985) ............................................................................................... 36

*Henderson v. Kennedy*,
  253 F.3d 12 (D.C. Cir. 2001)................................................................................ 32

*Iacangelo v. Georgetown Univ.*,
  760 F. Supp. 2d 63 (D.D.C. 2011)......................................................................28
*In re Sealed Case*,
  936 F.3d 582 (D.C. Cir. 2019).....................................................................12, 13
*Ingraham v. Wright*,
  430 U.S. 651 (1977)..........................................................................................21
*Jacobson v. Commonwealth of Massachusetts*,
  197 U.S. 11 (1905) .......................................................................................Passim
*Jawad v. Gates*,
  832 F.3d 364 (D.C. Cir. 2016)...........................................................................13
*Kaemmerling v. Lappin*,
  553 F.3d 669 (D.C. Cir. 2008).....................................................................29, 30
*Kentucky v. Graham*,
  473 U.S. 159 (1985)..........................................................................................37
*Khadr v. United States*,
  529 F.3d 1112 (D.C. Cir. 2008)..........................................................................5
*Klaassen v. Trustees of Ind. Univ.*,
  2021 WL 3073926 (N.D. Ind. July 18, 2021).....................................................23
*Laughlin v. Holder*,
  923 F.Supp.2d 204 (D.D.C. 2013).......................................................................6
*Levitan v. Ashcroft*,
  281 F.3d 1313 (D.C. Cir. 2002)..........................................................................33
*Los Angeles v. Lyons*,
  461 U.S. 95 (1983)..............................................................................................9
*Loughlin v. United States*,
  393 F.3d 155 (D.C. Cir. 2004).............................................................................5
*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).......................................................................................7, 11
*M.G.U. v. Neilsen*,
  325 F. Supp. 3d 111 (D.D.C. 2018)....................................................................22
*M.L.B. v. S.L.J.*,
  519 U.S. 102 (1996)..........................................................................................22
*Mahoney v. Doe*,
  642 F.3d 1112 (D.C. Cir. 2011)..........................................................................32
*Manzanita Band of Kumeyaay Nation v. Wolf*,
  496 F. Supp. 3d 257 (D.D.C. 2020)....................................................................34
*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ....................................................................................27, 28
*McCormick v. Stalder*,
  105 F.3d 1059 (5th Cir. 1997)............................................................................25
*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996).....................................................................................14, 15
*Mich. Canners & Freezers Ass'n, Inc. v. Agricultural Marketing & Bargaining Bd.*,
  467 U.S. 461 (1984) ..........................................................................................14
*Miller v. Mitchell*,
  598 F.3d 139 (3rd Cir. 2010)..............................................................................22

*Miller-McGee v. Washington Hosp. Ctr.*,
  920 A.2d 430 (D.C. 2007) ................................................................. 28
*Mills v. District of Columbia*,
  571 F.3d 1304 (D.C. Cir. 2009) ........................................................ 34
*Murphy v. National Collegiate Athletic Ass'n*,
  138 S. Ct. 1461 (2018) ...................................................................... 16
*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................... 5, 35
*Nurriddin v. Bolden*,
  818 F.3d 751 (D.C. Cir. 2016) ............................................................ 6
*Open Tech. Fund v. Pack*,
  470 F. Supp. 3d 8 (D.D.C. 2020) ...................................................... 35
*Organic Consumers Ass'n v. Hain Celestial Group, Inc.*,
  285 F. Supp. 3d 100 (D.D.C. 2018) .................................................. 14
*Pan Am Flight 73 Liaison Grp. v. Davé*,
  711 F. Supp. 2d 13 (D.D.C. 2010) .................................................... 34
*Planned Parenthood of Central Miss. v. Danforth*,
  428 U.S. 52 (1976) ...................................................................... 20, 21
*Potter v. Dist. of Columbia*,
  558 F.3d 542 (D.C. Cir. 2009) .......................................................... 29
*Power Mobility Coal. v. Leavitt*,
  404 F. Supp. 2d 190 (D.D.C. 2005) .................................................. 34
*Prince v. Massachusetts*,
  321 U.S. 158 (1944) ...................................................................... 21, 32
*Proctor v. District of Columbia*, ___ F. Supp. 3d ___,
  2021 WL 1209298 (D.D.C. Mar. 31, 2021) ............................. 7, 9, 11
*Proctor v. District of Columbia*,
  2018 WL 6181739 (D.D.C. Nov. 27, 2018) ...................................... 37
*Public Citizen Research Group v. Acosta*,
  363 F. Supp. 3d 1 (D.D.C. 2018) ...................................................... 35
*Pueschel v. Chao*,
  955 F.3d 163 (D.C. Cir. 2020) ............................................................ 6
*Quince Orchard Valley Citizens Ass'n v. Hodel*,
  872 F.2d 75 (4th Cir. 1989) .............................................................. 35
*R.J. Reynolds Tobacco Co. v. Durham County*,
  479 U.S. 130 (1986) .......................................................................... 16
*Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*,
  867 F.3d 338 (3d Cir. 2017) .............................................................. 31
*Reinhard v. Johnson*,
  209 F. Supp. 3d 207 (D.D.C. 2016) .................................................. 35
*Rice v. Santa Fe Elevator Corp.*,
  331 U.S. 218 (1947) .......................................................................... 15
*Robinson v. District of Columbia*,
  234 F. Supp. 3d 14 (D.D.C. 2017) .................................................... 19
*Robinson-Reeder v. Am. Council on Educ.*,
  626 F. Supp. 2d 11 (D.D.C. 2009) .................................................... 12

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020)................................................................................................24
*Russ v. Watts*,
    414 F.3d 783 (7th Cir. 2005)....................................................................................21
*S. Bay United Pentecostal Church v. Newsom*,
    140 S. Ct. 1613 (2020).............................................................................................36
*Salazar v. District of Columbia*,
    671 F.3d 1258 (D.C. Cir. 2012)...............................................................................35
*Shalala v. Whitecotton*,
    514 U.S. 268 (1995) .................................................................................................15
*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011)...........................................................................5, 12
*Sickle v. Torres Advanced Enterprise Solutions, LLC*,
    884 F.3d 338 (D.C. Cir. 2018)..................................................................................16
*Silkwood v. Kerr-McGee Corp.*,
    464 U.S. 238 (1984) .................................................................................................18
*Smith v. Henderson*,
    944 F. Supp. 2d 89 (D.D.C. 2013)............................................................................12
*Swanson Grp. Mfg. LLC v. Jewell*,
    790 F.3d 235 (D.C. Cir. 2015)....................................................................................7
*Sweis v. U.S. Foreign Claims Settlement Comm'n*,
    950 F. Supp. 2d 44 (D.D.C. 2013)............................................................................12
*Thomas v. Review Bd.*,
    450 U.S. 707 (1981) .................................................................................................30
*Troxel v. Granville*,
    530 U.S. 57 (2000) ...................................................................................................20
*United States v. Salerno*,
    481 U.S. 739 (1987) .................................................................................................13
*United Transp. Union v. I.C.C.*,
    891 F.2d 908 (D.C. Cir. 1989)..................................................................................10
*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ..........................................................................................19, 24
*Will v. Michigan Dept. of State Police*,
    491 U.S. 58 (1989) ............................................................................................15, 18
*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................................5, 12, 33, 34
*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) ....................................................................................30, 31, 33
*Workman v. Mingo Cty. Bd. of Educ.*,
    419 F. App'x 348 (4th Cir. 2011)..............................................................................24
*Zucht v. King*,
    260 U.S. 174 (1922) .................................................................................................36

**Statutes**

42 U.S.C. §§ 300aa-1, *et seq*. (National Childhood Vaccination Injury Act of 1986). ...............15
42 U.S.C. § 300aa-11..................................................................................................15

42 U.S.C. § 300aa-14 ................................................................................... 15
42 U.S.C. § 300aa-22(b)(1), (c) .............................................................. 2, 15
42 U.S.C. § 300aa-22(e) .............................................................................. 16
42 U.S.C. § 300aa-26 ............................................................................. 3, 16
42 U.S.C. § 300aa-26(d) .............................................................................. 10
42 U.S.C. § 300aa-26(d)(2) ................................................................... 16, 17
42 U.S.C. § 1983 ........................................................................................... 17
42 U.S.C. § 2000bb-1(a), (b) ....................................................................... 29
42 U.S.C. § 2000bb-1(b) .............................................................................. 32
42 U.S.C. § 2000bb-2(1)-(2) ........................................................................ 29
Health Insurance Portability and Accountability Act, Pub. L. No. 104-191, 110 Stat. 1936 ....... 18
Minor Consent for Vaccinations Amendment Act of 2020, D.C. Law 23-193 .................... Passim

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 1, 5
Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 6, 37
Fed. R. Civ. P. 12(h)(3) .................................................................................. 5

**Regulations**

22-B DCMR § 600, 600.7, 600.9 ........................................................... Passim
22-B DCMR § 602.1 ...................................................................................... 24
45 C.F.R. § 164.502(g)(3) ............................................................................ 18
*Standards for Privacy of Individually Identifiable Health Information*, U.S. Dep't of Health & Human Servs., 67 Fed. Reg. 53182 (Aug. 14, 2002) .............................................. 18

**Other Authorities**

*Restatement of the Law—Children and the Law*, § 19.01 .......................................... 21

## INTRODUCTION

Plaintiff Joshua Mazer seeks a preliminary injunction to enjoin the District of Columbia Department of Health, LaQuandra Nesbitt, and Muriel Bowser (collectively, the District) from enforcing the District's Minor Consent for Vaccinations Amendment Act of 2020 (the Act), which allows minors, in some circumstances, to obtain vaccines regardless of parental consent. Plaintiff's motion should be denied, and the Complaint should be dismissed, because plaintiff fails to meet the requirements for injunctive relief and fails to identify any constitutional or statutory violation.

Plaintiff filed this action seeking a preliminary injunction, but he has identified no injury that could support standing or warrant emergency relief. His daughter has not received a vaccine against his wishes under the Act and he has not offered any facts to show that she has plans to obtain one this way in the future. *See* Plaintiff's Memorandum in Support of Plaintiff's Application for Preliminary Injunction (Pl.'s Mem.) [4-1]; Decl. of Joshua Mazer [4-3].[1] There is no description of those plans in plaintiff's Complaint or motion for injunctive relief, only speculation atop speculation.

Even if the Court does not dispose of this matter on threshold standing grounds, plaintiff has not stated a claim for relief and similarly cannot make the requisite showing for a preliminary injunction because he cannot succeed on the merits of his claims. There is no conflict between District and federal law, no violation of federal law, no compelled interference with plaintiff's parental rights or interests, and no burden upon his own exercise of religious beliefs.

Additionally, plaintiff cannot show that he will suffer irreparable harm absent injunctive relief because plaintiff has not demonstrated any injury, and the balance of the equities and public interest weigh in favor of denying injunctive relief given the District's compelling interest in

---

[1]     Page citations are to the ECF pagination.

protecting and promoting public health. Accordingly, plaintiff's motion for preliminary injunction should be denied, and because plaintiff fails to show standing to pursue any of his six theories, or to state a claim, the Court should grant the District's motion to dismiss the Complaint.

## BACKGROUND

### I.    The National Childhood Vaccine Injury Act of 1986

The Supreme Court has called "the elimination of communicable diseases through vaccination … 'one of the greatest achievements' of public health in the 20th century." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 226 (2011) (Scalia, J.). "But in the 1970's and 1980's vaccines became, one might say, victims of their own success." *Id*. "They had been so effective in preventing infectious diseases that the public became much less alarmed at the threat of those diseases, and much more concerned with the risk of injury from the vaccines themselves." *Id*. The concerns about risks depressed vaccination rates. *Id*. at 277. And a "massive increase in vaccine-related tort litigation" led to instability in the vaccine market, and production shortages. *Id*. The difficulty of obtaining compensation "threatened to depress vaccination rates even further." *Id*. "This was a source of concern to public health officials, since vaccines are effective in preventing outbreaks of disease only if a large percentage of the population is vaccinated." *Id*.

Congress enacted the National Childhood Vaccine Injury Act of 1986 (NCVIA) in response to these problems. *Id*. at 228. "To stabilize the market and facilitate compensation," the NCVIA "establishes a no-fault compensation program" designed to be "faster" and easier than the civil tort system and that provides "significant tort liability protections for vaccine manufacturers" who comply with all regulatory requirements. *Id*. at 228, 229; 42 U.S.C. § 300aa-22(b)(1), (c). Relevantly, the NCVIA also establishes federal responsibility to create "vaccine information materials" that present the benefits of vaccines and warnings of their potential dangers and directs

2

providers to give these to "legal representatives of any child or to any other individual to whom such provider intends to administer" a vaccine. 42 U.S.C. § 300aa-26.

## II.   <u>The Minor Consent for Vaccinations Amendment Act of 2020</u>

The Minor Consent for Vaccinations Amendment Act of 2020 (the Act), D.C. Law 23-193, amends a District regulation permitting minors "of any age" to consent to certain medical procedures; the regulation has been in effect in some form since 1974. *See* District Regulation No. 74-22 (Aug. 30, 1974), 1974 D.C. Stat. Reg. 290–92, *available at* https://tinyurl.com/4fx2rn5n; 22-B DCMR § 600, 600.7 (same but slightly expanded). The Act was introduced on May 5, 2019, "on the heels of a measles outbreak that spread across 11 states in 2019." Council of the District of Columbia, Committee on Health, Report on Bill 23-0171, at 1, 2 (Oct. 7, 2020), *available at* https://tinyurl.com/4cuty3af. According to that Committee, the legislation was "needed so that the District can move towards a high enough immunization rate to achieve herd immunity—or 95% immunity—from such diseases as measles." *Id.* at 2. The Council approved the bill in November 2020, and it went into effect on March 16, 2021. *See* 68 D.C. Reg. 4172 (Apr. 23, 2021).

The Act, as codified, amends 22-B DCMR § 600, by adding a new subsection 600.9:

600.9 (a) A minor, 11 years of age or older, may consent to receive a vaccine if the minor is capable of meeting the informed consent standard, the vaccine is recommended by the United States Advisory Committee on Immunization Practices ("ACIP"), and will be provided in accordance with ACIP's recommended immunization schedule.

(b) For the purposes of this subsection, a minor shall be deemed to meet the informed consent standard if the minor is able to comprehend the need for, the nature of, and any significant risks ordinarily inherent in the medical care.

(c) The Department of Health shall produce one or more age-appropriate alternative vaccine information sheets, which shall be made available before vaccination of minors to support providers for use in the informed consent process.

…

22-B DCMR § 600, 600.9.

3

### III.   <u>Plaintiff's Allegations</u>

Plaintiff is the parent and legal guardian of a 16-year-old referred to in his Complaint as Jane Doe, or J.D. Compl. [1] ¶ 7. He "want[s] to know and be present when" his children "undergo any medical procedure." *Id*. ¶ 61. Plaintiff's religious beliefs "prohibi[t] him from permitting acts that he believes would harm his child," and he has "therefore submitted a religious exemption to excuse J.D. from school vaccination requirements in more recent years." *Id*. ¶ 48.

In late April 2021, J.D. visited a medical center in the District of Columbia in an effort to obtain a Tdap vaccine that she needed to attend a summer camp. *Id*. ¶¶ 49, 50, 52. When the vaccines arrived in J.D.'s treating room, she "became nervous" and said she did not want the shots. *Id*. ¶ 54. "After further dialogue," J.D. left without receiving the vaccines. *Id*. ¶ 54.

Plaintiff learned of J.D.'s visit soon after and "discussed the issue with her." *Id*. ¶ 66; Mazer Decl. [4-3] ¶ 8 (stating J.D. told him about it "[i]n and around April 2021"). He believes J.D. is "capable of circumventing her parents to go to the District … and request one or more vaccinations," and that she would receive the vaccines if she did so. *Id*. Plaintiff "has reason to believe that J.D. has not abandoned her intention" to seek vaccine administration again. *Id*. Plaintiff seeks a declaration that the Act is unconstitutional, on its face or as applied; that it is preempted by federal law; and that it violates the Religious Freedom Restoration Act (RFRA). *Id*. at 29 (Prayer for Relief).

### IV.   <u>Procedural History</u>

Months after J.D.'s visit to the medical provider, plaintiff filed suit on July 2, 2021. Compl. [1]. Plaintiff filed a motion for preliminary injunction six days later, along with a memorandum in support, his own declaration, and, among other things, certain materials from the U.S. Centers for Disease Control and Prevention (CDC). Pl.'s Mot. for Prelim. Inj. (Motion), [4]; Pl.'s Mem. Supp.

(Pl.'s Mem.), [4-1]; Mazer Decl., [4-3]; Decl. of Elizabeth Brehm, [4-2] (declaration of counsel attaching 11 exhibits). The Court granted the District's motion to respond by July 30, 2021. *See* Def.'s Mot. for Extension of Time to Respond, [8]; Minute Order of July 13, 2021.

## LEGAL STANDARD

### I.   <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating that the court's jurisdiction is proper by a preponderance of the evidence. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). "[S]ubject matter jurisdiction is, of necessity, the first issue for an Article III court." *Loughlin v. United States*, 393 F.3d 155, 170 (D.C. Cir. 2004). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### II.   <u>Preliminary Injunction</u>

A preliminary injunction "is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "The primary purpose of a preliminary injunction is to preserve the object of the controversy in its then existing condition—to preserve the status quo." *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (emphasis added). The last two factors merge when the government opposes an injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). A plaintiff bears the burden of proving all four prongs of the standard before relief can be granted. *Davis v.*

5

*Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). *See also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (movant must demonstrate "by a clear showing" that the requested emergency relief is warranted).

### III.   Motion to Dismiss for Failure to State a Claim

A case must be dismissed when a party fails to set forth "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although well-pleaded factual allegations must be taken as true, a plaintiff must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Courts need not accept as true conclusory "assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 679, and "need not … accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint," *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations adopted) (internal quotation marks omitted). Similarly, "the court is not required to accept legal conclusions as correct." *Pueschel v. Chao*, 955 F.3d 163, 166 (D.C. Cir. 2020). In evaluating a motion under Rule 12(b)(6), the Court "may consider … the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Laughlin v. Holder*, 923 F.Supp.2d 204, 209 (D.D.C. 2013).

### ARGUMENT

### I.   Plaintiff's Claims Must Be Dismissed Because He Lacks Standing.

To establish standing, plaintiff must sufficiently allege three requirements:  injury in fact, causation and redressability. *California v. Texas*, 141 S. Ct. 2104, 2113 (2021). "[A]n 'injury in

fact' [is] an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). To satisfy the imminence requirement, an injury must be "*certainly impending*"; "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted) (emphasis in original). To show causation, the injury must be "fairly traceable" to the defendant's action. *California*, 141 S. Ct. at 2114. "[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party, … standing is not precluded, but is ordinarily substantially more difficult to establish." *Id.* at 2117. Similarly, plaintiff bears a "'rigorous burden to establish standing' for the prospective and declaratory relief" he requests. *Proctor v. District of Columbia*, ___ F. Supp. 3d ___, 2021 WL 1209298, at *7 (D.D.C. Mar. 31, 2021) (quoting *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015)).

Here, plaintiff cannot show that *any* injury is certainly impending.

Plaintiff alleges that he is injured because, were J.D. to obtain a vaccine, it would violate his "fundamental right" to "control" and "participate in the medical decisions of his minor child," *id.* ¶¶ 74, 84, 90, and "violate[]" and "substantial[ly] burden" plaintiff's "right to practice his religion as he sees fit," *id.* ¶¶ 99, 105. As an initial matter, plaintiff's theory of injury fails because the statute does not in any way compel plaintiff to engage in any behavior or prohibit plaintiff from participating in J.D.'s decisionmaking process of whether to obtain a vaccine. The Act plainly does not force plaintiff to vaccinate his children, or to consent to vaccination on their behalf.

Moreover, plaintiff's alleged injury depends upon pure speculation that his daughter will again seek vaccination. Plaintiff's Complaint, and his own filed declaration (repeating his

allegations), fail to show that this is likely, let alone certainly impending. Plaintiff's allegations fall short of asserting that J.D. in fact intends to obtain a vaccination. Instead, plaintiff baldly asserts that he "has reason to believe that J.D. has not abandoned her intention" to seek vaccination again, without any further elaboration. Compl. ¶ 66.

Additionally, nothing about J.D.'s alleged experience indicates that her injection with any particular vaccine is "imminent." J.D. apparently sought out the Tdap vaccination because she needed it to attend a summer camp. *Id*. ¶ 50. Plaintiff does not allege that J.D. still wants to attend the summer camp, or still needs vaccination to do so, or even that the summer camp is not yet over. He offers no other possible motivation for J.D. to seek vaccination again.

Further, plaintiff's Complaint shows that J.D. now has information she did not have before that may deter her from seeking the Tdap vaccination again, namely, that she previously had a "severe" allergic reaction to the Tdap vaccine. *Id*. ¶¶ 46, 59. Plaintiff does not allege that, in light of that information, J.D. still wishes to be vaccinated. And, accepting as true the allegations in the complaint, that J.D. "became nervous upon seeing the shots," *id*. ¶ 54, and felt physically trapped the last time she sought out vaccination, *id*. ¶ 57, those facts only diminish the likelihood that she would repeat her efforts. They certainly fail to demonstrate that a second vaccination attempt is "certainly impending."

More fundamentally, based on plaintiff's allegations, it is unclear whether the Act even extends to J.D., who plaintiff maintains "did not understand that her previous reaction" to a vaccine "was an allergic reaction."  *Id*. ¶ 59. The Act only permits so-called "mature minors" to consent to receiving a vaccine, or those minors "able to comprehend the need for, the nature of, and *any significant risks* ordinarily inherent in the medical care." 22-B DCMR § 600.9(a). Plaintiff has not alleged that J.D. back in April met that criteria, or that she would today. Again, accepting the truth

of plaintiff's allegations—that MedStar Georgetown Pediatrics "never asked J.D. about her medical history or any prior reactions to a vaccine, never provided her with a VIS or any literature regarding the vaccines," Compl. ¶ 56—plaintiff's alleged injury in fact appears to stem from actions on the part of the medical provider, which, in any event, are not authorized by the Act. *See* 22-B DCMR § 600.9(b) (describing the conditions under which "a minor shall be deemed to meet the informed consent standard").

Courts, including this one, routinely find that alleged injuries depending upon many-linked chains of what-ifs such as this are too speculative to support standing. *See Black Lives Matter D.C. v. Trump*, Civil Action No. 20-1469, 2021 WL 2530722, *9 (D.D.C. June 21, 2021) (finding plaintiffs' "hypothetical chain of events … too speculative to confer standing for injunctive relief" when injury depended on four different uncertain things happening in succession) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105–106 (1983)); *Cason v. Nat'l Football Players Assoc.*, Civil Action No. 20-01875, ___ F. Supp. 3d ___, 2021 WL 1840481, at *7 (D.D.C. May 7, 2021) (same, noting "[t]hat is speculation atop speculation"); *Proctor*, 2021 WL 1209298, at *8 (same, where injury depended upon six links in a chain).

This is especially true when, as here, the challenged Act authorizes, but does not "mandate or direct" any action that would injure plaintiff, and the occurrence of the injury further depends upon the uncertain actions of third parties. *See*, *e.g.*, *Clapper*, 568 U.S. at 412 (plaintiffs lack standing when challenged act "at most *authorizes*—but does not *mandate* or *direct*" the injury-causing event) (emphasis in original); *Cason*, 2021 WL 1840481, at *7 (rejecting "as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties)") (quoting *United Transp. Union v. I.C.C.*, 891 F.2d 908, 912 (D.C. Cir. 1989)); *cf. California*, 141 S. Ct. at 2117 (causation "substantially more difficult to establish" when

occurrence of alleged injuries depends upon the actions of third parties). The Act does not require plaintiff or his daughter to do anything. It authorizes doctors to provide a service under certain circumstances. Plaintiff's alleged injuries depend upon predictions about the independent behavior of both his daughter and unknown medical professionals. These predictions about the actions of third parties "are not normally susceptible of labelling as 'true' or 'false'" and should be rejected as overly speculative. *United Transp.*, 891 F.2d at 912. They cannot support standing here. *Id.*

Plaintiff's additional theory of injury under the NCVIA—that the Act violates plaintiff's right under the NCVIA to receive a VIS, *see* Compl. ¶ 70—is also unavailing. That theory is entirely misplaced because the NCVIA places the obligation to provide the VIS on the part of "health care provider[s] who administer[] . . . vaccine[s]." 42 U.S.C. § 300aa-26(d). Once again, to the extent that the "health care provider" sought out by J.D. did not provide the requisite information required under the NCVIA, *see* Compl. ¶ 56 (which information is also required under the Act, *see* 22-B DCMR § 600.9(c)), any resulting injury is only attributable to that provider. In any event, plaintiff already has the information required to be provided under the NCVIA, *see* Ex. A to Brehm Decl., [4-2] ¶ 2, pp. 4-26 (attaching Vaccine Information Statements for CDC's childhood vaccines), such that there is little if any likelihood that plaintiff would suffer any harm as a result of the alleged *future* violations of the NCVIA. *See Ctr. for Law and Educ. v. Dep't of Ed.,* 396 F.3d 1152, 1159 (D.C. Cir. 2005) (explaining that plaintiff must demonstrate "[n]ot only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest").

## II.  Plaintiff Is Not Entitled to a Preliminary Injunction.

### A.  Plaintiff Cannot Show He Has Standing With Competent Evidence.

Even if the Court finds plaintiff has alleged facts sufficient to survive a motion to dismiss for lack of standing, plaintiff's burden in support of his motion for preliminary injunction is heavier; plaintiff cannot carry that burden, and his Motion should be denied for that reason alone. "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof … ." *Proctor*, 2021 WL 1209298, at *6 (quoting *Lujan*, 504 U.S. at 561) (alterations in *Proctor*). "[W]hen a plaintiff seeks a preliminary injunction, the plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'" *Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 186 (D.D.C.), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 907 n.8). Plaintiff must therefore carry his burden with competent evidence. *Proctor*, 2021 WL 1209298, at *6. And he must at least show a "substantial likelihood" that he will be injured by the Act. *Vilsack*, 808 F.3d at 913. Plaintiff cannot do so.

Plaintiff has submitted a declaration in support of his Motion, which largely repeats the allegations in his Complaint, and which fails to provide sufficient evidence to support the Motion in two crucial ways. *See* Mazer Decl. [4-3]. First, plaintiff states that he "fear[s] that J.D. may at any time either return to the same practice or visit another practice in D.C. where she may feel more comfortable and confident and therefore may receive one or more vaccinations." *Id*. ¶ 16. But he offers *no* factual basis for this fear. *Id*. There is no description of J.D.'s future plans whatsoever—a total absence of evidence. Presumably, plaintiff's fear is based on J.D.'s alleged prior interest in receiving the Tdap vaccine, which is also described in plaintiff's declaration. *Id*. ¶ 8 ("In and around April 2021, my daughter told me the following happened: … ."). For the reasons discussed in above in Section I, this fear is not even plausible, let alone "substantially probable" to come true. Second, the facts describing J.D.'s prior experience in plaintiff's declaration are not

11

competent evidence—they are pure hearsay, or hearsay within hearsay, describing what plaintiff says J.D. told him, and what J.D. told him the doctors said. Mazer Decl. ¶¶ 8, 9. For both, or either, of these reasons, plaintiff's Motion must be denied because he has failed to show that he has standing with competent evidence. *E.g.*, *Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 14 (D.D.C. 2009) (denying motion for preliminary injunction when plaintiff presented only "inadmissible hearsay and her own speculative and unsupported assertions"). A "party who fails to show a substantial likelihood of standing is not entitled to a preliminary injunction." *Vilsack*, 808 F.3d at 913 (internal quotation marks omitted).

### B.      Plaintiff Is Not Likely To Succeed on the Merits of Any of His Claims.

Demonstrating a likelihood of success on the merits is a free-standing requirement for a preliminary injunction, *Sherley*, 644 F.3d at 393 (quotation omitted), and "a failure to show a likelihood of success on the merits is alone sufficient to defeat a preliminary-injunction motion," *Smith v. Henderson*, 944 F. Supp. 2d 89, 96 (D.D.C. 2013). The Court need not conclude that plaintiff will lose on the merits, only that he has not met the extraordinary burden of showing a clear entitlement to immediate relief. *Sweis v. U.S. Foreign Claims Settlement Comm'n*, 950 F. Supp. 2d 44, 48 (D.D.C. 2013). Plaintiff must show that success is "likely." *Winter*, 555 U.S. at 20–22. Here, for the reasons below, plaintiff has not met his burden because he has not demonstrated that success on the merits is possible, let alone likely.

### 1.      The Act Is Not Unconstitutional In All Its Applications.

Plaintiff challenges the Act on its face and as-applied. Compl. ¶ 85. A facial challenge asserts that the law is unconstitutional in all its applications. *In re Sealed Case*, 936 F.3d 582, 588–89 (D.C. Cir. 2019). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances

exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). There "has been some debate" about the scope of *Salerno*, but "all agree that a facial challenge must fail where the statute has a plainly legitimate sweep." *In re Sealed Case*, 936 F.3d at 589. If the law can be constitutionally applied in some way, it has a legitimate sweep. *E.g.*, *id.* at 589 (determining criminal statute facially valid after identifying prior prosecutions addressing conduct Congress plainly had the power to criminalize); *Jawad v. Gates*, 832 F.3d 364, 370–71 (D.C. Cir. 2016) (denying facial challenge when prior precedent affirmed constitutional application).

Here, the Act can be constitutionally applied to at least help competent minors whose only impediment to vaccination before the Act went into effect was the logistics of getting to the doctor *with* their parents to obtain desired vaccines. Now they can do it on their own. This scenario would not raise any of the constitutional concerns described in plaintiff's Complaint and shows that the Act has a plainly legitimate sweep.[2] Plaintiff's facial challenge should thus be denied.

### 2. Plaintiff Cannot Succeed on His Supremacy Clause Claim Because There Is No "Conflict" with Federal Law.

Plaintiff alleges that the Act is preempted, arguing that federal law requires parental consent for vaccines for minors, Pl.'s Mem. at 23, and that medical practitioners provide the minor's parents with a "vaccine information statement" (VIS) prior to vaccination, hence "it is impossible" to comply with both federal and District law. Pl.'s Mem. at 27. Notwithstanding that plaintiff's

---

[2]     This scenario is also a likely use of the Act. At a hearing on the Act before the D.C. Council's Committee on Health, a witness from the District's Department of Health testified that the District surveys families whose children are not vaccinated, and in "the majority of cases, the feedback we hear from families is that they have yet to see a medical provider because of competing priorities," or they did not realize vaccines were needed or required. Statement of Anjali Talwalkar, Report on Bill 23-0171, at 52 (Oct. 7, 2020), *available at* https://tinyurl.com/4cuty3af.

daughter did not receive any vaccines here (and that the NCVIA's mandates apply only to healthcare providers and *not* parents or vaccine recipients), plaintiff is incorrect.[3]

Typically, there are three ways by which federal law will preempt State or local law: (1) explicitly, in the text of federal legislation; (2) where Congress intends that the federal government occupy the "field" exclusively; or (3) where State or local law actually conflicts with federal law. *Mich. Canners & Freezers Ass'n, Inc. v. Agricultural Marketing & Bargaining Bd.*, 467 U.S. 461, 469 (1984).[4] "[T]he purpose of Congress is the ultimate touchstone" in preemption cases. *Organic Consumers Ass'n v. Hain Celestial Grp., Inc.*, 285 F. Supp. 3d 100, 104 (D.D.C. 2018) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). When "Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)).

---

[3]    Plaintiff is wrong from the start in implying that federal law mandates consent prior to the administration of vaccines. *See, e.g.*, Centers for Disease Control and Prevention (CDC), *Pfizer-BioNTech COVID-19 Vaccine Questions* at 14 (available online at *https://www.cdc.gov/vaccines/covid-19/info-by-product/pfizer/pfizer-bioNTech-faqs.html#vaccination-minors*) (accessed July 19, 2021) ("The federal government does not have specific requirements for medical consent for vaccination."); CDC, *Vaccines for Children Program vs. CDC COVID-19 Vaccination Program*, available at *https://www.cdc.gov/vaccines/covid-19/vfc-vs-covid19-vax-programs.html* (accessed July 20, 2021) ("The federal government does not have specific requirements for medical consent for vaccination. Providers should adhere to the medical consent laws of their state/jurisdiction … ."). *See also, e.g.,* Abigail English, *et al.*, "Legal Basis for Consent for Health Care and Vaccination for Adolescents," 121 *Pediatrics* S85 (2008) (*available online at* https://pediatrics.aappublications.org/content/pediatrics/121/Supplement_1/S85.full-text.pdf) (accessed July 20, 2021) ("Consent is not addressed in the NCVIA. Consent for vaccination, as for other health care, is governed by state law. However, confusion sometimes arises among physicians or parents, who think that the VIS is a written informed consent form, although it is not.").

[4]    Traditional preemption analysis applies to the District of Columbia. *E.g.*, *Organic Consumers Ass'n v. Hain Celestial Group, Inc.*, 285 F. Supp. 3d 100, n.3 (D.D.C. 2018) (citing *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 326 (D.C. Cir. 2014)).

And there is a strong presumption *against* preemption, which "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act … ." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 13 (2013) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). The historic police powers of the States and the District encompass the authority to protect the health and safety of their citizens. *See*, *e.g.*, *Medtronic, Inc.*, 518 U.S. at 475; *Barnes v. Glen Theatre*, 501 U.S. 560, 569 (1991); *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905).

Plaintiff invokes the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 *et seq*. The NCVIA "establishes a no-fault compensation program" in lieu of State civil tort systems to compensate persons injured by certain vaccines for claims against the manufacturers. *Bruesewitz*, 562 U.S. at 228;[5] *see also Shalala v. Whitecotton*, 514 U.S. 268, 269–70 (1995) ("For injuries ... traceable to vaccinations, the [national Vaccine Injury Compensation Program] establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."). In exchange for this streamlined system, the NCVIA provided "significant tort-liability protections for vaccine manufacturers." *Bruesewitz*, 562 U.S. at 239; 42 U.S.C. § 300aa-22(b)(1), (c). It expressly preempts state law imposing liability on manufacturers for certain actions, *see id*. at (e)("Preemption"), and expressly provides that State law otherwise applies to vaccine-related civil damages actions, *id*. at (a) ("General Rule"). *See also* 42 U.S.C. § 300aa-11 (prohibiting the filing of certain actions seeking more than $1,000 or unspecified damages in State or federal court without prior use of stream-lined system).

---

[5]     The covered vaccines are listed in the "Vaccine Injury Table" and include common childhood vaccines for diseases such as diphtheria, tetanus, pertussis, polio, measles, mumps, and rubella. 42 U.S.C. § 300aa-14.

There is *no* explicit preemption provision in the NCVIA implicating the District's Act here and plaintiff has not cited any. To the contrary, the NCVIA expressly addresses preemption, and speaks only to certain prohibitions on liability for manufacturers. 42 U.S.C. § 300aa-22(e). Moreover, plaintiff has not argued that Congress has regulated so pervasively in this area that field preemption applies. *See, e.g., Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018) ("Field preemption occurs when federal law occupies a 'field' of regulation 'so comprehensively that it has left no room for supplementary state legislation.'") (quoting *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 140 (1986)).

Consequently, preemption exists, if at all, only under a "conflict preemption" theory. To succeed, plaintiff must show that the operation of the NCVIA and District law "clash in a way that makes 'compliance with both [local] and federal law … impossible,' or [that District law] 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Sickle v. Torres Advanced Enterprise Solutions, LLC*, 884 F.3d 338, 347 (D.C. Cir. 2018) (citations omitted). Here, plaintiff cannot meet his burden because there is no conflict.

Plaintiff argues that the NCVIA requires that all parents must be given a VIS before any minor receives a vaccine. Pl.'s Mem. at 27 (citing 42 U.S.C. § 300aa-26). This interpretation is incorrect for three reasons. First, the plain language of that provision says that healthcare providers who administer the referenced vaccines "shall provide to the legal representatives of any child *or* to *any other individual to whom such provider intends to administer such vaccine* a copy of the [VIS]." 42 U.S.C. § 300aa-26(d)(2) (emphasis added). Thus, if a mature minor may receive a vaccine under the Act (or any similar State law), then he or she qualifies as "any other individual to whom" a healthcare provider intends to administer a vaccine, *id*., and a provider may easily comply with both laws. There is no conflict here. *See* CDC, *Vaccines for Children Program vs.*

16

*CDC COVID-19 Vaccination Program*, available at *https://www.cdc.gov/vaccines/covid-19/vfc-vs-covid19-vax-programs.html* (accessed July 20, 2021) ("Providers must give the appropriate Vaccine Information Statement *to the patient* (or parent or legal representative) prior to every dose of specific vaccines covered under the National Vaccine Childhood Injury Act.") (emphasis added); CDC, *VIS Frequently Asked Questions*, available at *https://www.cdc.gov/vaccines/hcp/vis/about/vis-faqs.html* (accessed July 20, 2021) ("A reasonable interpretation is that State law, and specifically the State's medical consent law, should be deferred to for purposes of defining who is a minor. For example, if an 18 year old can consent to immunization under a State's law, that 18 year old is the person who should be provided a copy of the VIS.").[6]

Second, plaintiff's interpretation of the NCVIA's information requirements suggests that Congress *implicitly* acted to preempt and abrogate laws existing across the States, well before the NCVIA was enacted, that permitted minors to consent to medical treatment without their parents' knowledge or assistance. *See*, *e.g.*, Ex. A, "State Legislation Relating to Treatment of Minors (as of September 1971)," attached as appendix to Harriet F. Pilpel, Minors' Rights to Medical Care, 36 Alb. L. Rev. 462 (1972), showing laws permitting minors to consent to various medical treatments existing in 49 States; District Reg. No. 74-22 (Aug. 30, 1974). But obliteration of State law cannot be implied; Congress's intent must be "unmistakably clear." *Will*, 491 U.S. at 65.

---

[6]    For the same reasons, plaintiff fails to state a claim that the Act violates the NCVIA. *See* Pl.'s Mem. at 28 (arguing the Act deprives plaintiff of "his rights and privileges under the Act"). In addition, the portion of the NCVIA plaintiff cites imposes a duty on *medical providers* to supply certain information, not the District. Even assuming—for purposes of this briefing only—that the NCVIA creates a federal right enforceable through 42 U.S.C. § 1983, it is hard to see how any law passed by the District could directly violate this provision of the NCVIA.

Third, plaintiff's interpretation is inconsistent with subsequent federal legislation. "The case for federal preemption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of interest and has nonetheless decided to 'stand by both concepts and to tolerate whatever tension there [is] between them.'" *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 167 (1989) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 256 (1984)). Here, notwithstanding that plaintiff has failed to demonstrate any conflict in the NCVIA, other federal healthcare law expressly acknowledges and incorporates the "mature minor" doctrine found in most State law. Regulation under the federal Health Insurance Portability and Accountability Act (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936, acknowledges State authority to grant minors the ability to consent to certain medical care without parental notification; the specific regulation generally defers to state law. 45 C.F.R. § 164.502(g)(3) (discussing when a minor "has the authority to act as an individual, with respect to protected health information pertaining to a health care service" including when "[t]he minor may lawfully obtain such health care service without the consent of a parent, guardian, or other person acting in loco parentis, and the minor, a court, or another person authorized by law consents to such health care service"); *id.* (defining "personal representative" as used in HIPAA to be the relevant decisionmaker "under applicable law," including State law); *see also Standards for Privacy of Individually Identifiable Health Information*, U.S. Dep't of Health & Human Servs., 67 Fed. Reg. 53182, 53201 (Aug. 14, 2002) ("[T]he addition of paragraphs (g)(3)(ii)(A) and (B) of § 164.502, clarify that State and other applicable law governs when such law explicitly requires, permits, or prohibits disclosure of protected health information to a parent.").

Thus, even where federal and state laws overlap, the proper judicial approach is to reconcile the statutory schemes rather than hold one completely ineffectual. *See*, *e.g.*, *Exxon Corp. v.*

*Governor of Maryland*, 437 U.S. 117, 132 (1978) (stating Supreme Court is "generally reluctant to infer preemption" and it would be "particularly inappropriate to do so in this case because the basic purposes of the state statute and the [federal act] are similar"). Because there is no conflict here, federal law and the Act can comfortably coexist.

Plaintiff cites no case—and the District is aware of none—finding that federal vaccine law preempts laws of the kind challenged here. Plaintiff cannot succeed on his claim of preemption.

3. **Plaintiff Cannot Succeed on His Substantive Due Process Claim Because the Act Does Not Deprive Him of a Liberty Interest or Fundamental Right; Alternatively, It Is Narrowly Tailored To Serve a Compelling State Interest, and Survives Rational Basis Review.**

Fifth Amendment due process protects substantive liberty interests. *E.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). Fundamental liberty interests—those "deeply rooted in this Nation's history and tradition"—may not be infringed upon, "unless the infringement is narrowly tailored to serve a compelling state interest." *Id*. at 721 (internal quotation marks omitted). Infringements upon liberty interests that are not fundamental are subject only to rational basis review. *Id*. at 767 n.9; *see also*, *e.g.*, *Robinson v. District of Columbia*, 234 F. Supp. 3d 14, 25 (D.D.C. 2017) (citing *Gordon v. Holder*, 721 F.3d 638, 656 (D.C. Cir. 2013)). Due process claims require a "careful description" of the asserted interest. *Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 702 (D.C. Cir. 2007) (*en banc*). The Supreme Court, moreover, "has cautioned against expanding substantive rights protected by the Due Process Clause." *Id.*; *see also id.* ("[T]he Supreme Court has directed courts to 'exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the [courts' members].'").

a. **The Act Does Not Infringe On Any Liberty or Right.**

19

Plaintiff alleges that he has a "fundamental liberty interest in the right to parent," which includes the "authority to control the medication that" J.D. receives. Pl.'s Mem. at 30, 34. Although the Supreme Court recognizes "the fundamental right of parents to make decisions concerning the care, custody, and control of their children[,]" *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (*plurality op.*), plaintiff's description of it is overbroad. The right or interest described in *Troxel* does *not* encompass a plenary right for plaintiff to "control the medication" of a mature minor.

Plaintiff cites only two cases in support of this proposition, neither of which hold up. *See* Pl.'s Mem. at 30, 34–35. *Kozup v. Georgetown University* does not discuss constitutional rights at all. 851 F.2d 437, 439 (D.C. Cir. 1988). Rather, it discusses *District* law, explaining that "[i]n the case of a minor patient, the relevant consent is that of the parents," but that "this doctrine is subject to certain exceptions … when parental consent is not necessary," including when "the patient is a 'mature minor.'" *Id*. (quoting *Bonner v. Moran*, 126 F.2d 121, 122 (D.C. Cir. 1941)). *American Academy of Pediatrics v. Heckler* does touch on constitutional due process, but it does not hold, as plaintiff argues, Pl.'s Mem. at 35, that a regulation "infringe[d] upon the constitutional right of parents to decide the medical care of their children." 561 F. Supp. 395, 402–403 (D.D.C. 1983). Rather, it declined to rule on plaintiffs' constitutional arguments, explaining that the "exact nature of the rights plaintiffs seek to assert are uncertain … ." *Id.*

Plaintiff's asserted right to plenary control of his daughter's medical care has been squarely rejected by the Supreme Court. *Planned Parenthood of Central Miss. v. Danforth*, 428 U.S. 52, 74 (1976) (holding State "may not impose a blanket provision … requiring the consent of a parent or person *in loco parentis*" for minors before specified medical treatment); *cf. Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944) ("Neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as parens

patriae may restrict the parent's control … ."). "Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Danforth*, 428 U.S. at 74. History and tradition, moreover, confirm a constitutional right to bodily integrity, *see Ingraham v. Wright*, 430 U.S. 651, 673 (1977), as well as the right of mature minors to consent to medical care, *see, e.g.*, *Bonner v. Moran*, 126 F.2d 121, 122 (D.C. Cir. 1941). Indeed, the District, like many States, has laws authorizing minors to consent to various medical procedures and care, including mental health, substance abuse, contraceptive services, and prenatal care. 22-B DCMR § 600, 600.7 ("A minor of any age may consent to health services which he or she requests for the prevention, diagnosis, or treatment of the following medical situations …")[7]; *Restatement of the Law—Children and the Law*, § 19.01 Consent to Treatment by Mature Minor (Am. L. Inst. 2019). "[M]any of these statutes have been in place for 3 or 4 decades." Abigail English, *et al.*, "Legal Basis for Consent for Health Care and Vaccination for Adolescents," 121 Pediatrics S85 (2008); Ex. A (Table of State laws from 1971). And the common-law mature minor doctrine is even more longstanding. *See Bakker v. Welsh*, 108 N.W. 94, 96 (1906) (rejecting liability by medical providers for failure to obtain parental consent where "young fellow almost grown into manhood" sought out surgery).

Courts have found deprivations of the liberty interest of parents in the care and upbringing of their children only in cases where the government "compelled interference in the parent-child relationship." *Anspach v. City of Philadelphia*, 503 F.3d 256, 262 (3d Cir. 2007); *accord Russ v. Watts*, 414 F.3d 783, 788 (7th Cir. 2005). As the Third Circuit explained, any infringement on a protected liberty interest in this context typically arises where the state "either requir[es] or prohibit[s]some activity." *Anspach*, 503 F.3d at 263; *see, e.g.*, *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996)

---

[7]     Plaintiff provides no principled basis for why the particular medical procedure at issue here—administration of a vaccine—but not these others, would fail constitutional scrutiny.

(Mississippi statute prohibited indigent mother's right to appeal judgment terminating her parental rights without prepayment of court costs); *Miller v. Mitchell*, 598 F.3d 139, 144 (3rd Cir. 2010) (district attorney threatened prosecution unless daughters attended "education and counseling" to "gain an understanding of what it means to be a girl in today's society"); *Gruenke v. Seip*, 225 F.3d 290, 303–304 (3d Cir. 2000) (high school coach forced minor student to take a pregnancy test); *M.G.U. v. Neilsen*, 325 F. Supp. 3d 111, 120 (D.D.C. 2018) (government separated immigrants from their young children after crossing the United States-Mexico border); *Goings v. Court Servs. and Offender Supervision Agency*, 786 F. Supp. 2d 48, 79 (D.D.C. 2011) (probation conditions prohibited all contact with minor children).

    *Anspach* is particularly instructive. There, a pregnant 16-year-old girl visited a city health center independently sought out and received (and then took) the "morning after" pill. 503 F.3d at 259–60. Subsequently she and her parents sued, alleging a violation of substantive due process on the basis that the center's "policies were aimed at preventing parents from learning of their minor daughter's possible pregnancies." *Id*. at 261. The Third Circuit rejected that stance where the minor was not "in any way compelled, constrained, or coerced into [her] course of action," and there existed "no prohibition against the [parents] participating in [the minor child's] decision[]." *Id.* at 266–67; *see also id.* at 264  ("[N]o one prevented [the minor] from calling her parents before she took the pills she had requested."). There were no allegations of any "manipulative, coercive, or restraining conduct by the State." *Id*. at 266.[8]  The court noted that the "real problem" at the heart of the plaintiff-parents' claim, based on their lack of knowledge about their child's medical

---

[8]    The *Anspach* Court also reasoned that the plaintiffs' claims, if successful "would undermine the minor's right to privacy and exceed the scope of familial liberty interest … ." *Id.* at 262; *see also id*. at 268 ("The Constitution does not protect parental sensibilities, nor guarantee that a child will follow their parents' moral directives.").

decision, was "not that the state actors *interfered* with" the plaintiff's rights as parents, but that "the state actors did not assist" them in "affirmatively *foster*[*ing*] the parent/child relationship"— a right that the Due Process Clause does not confer. *Id.* at 266–67; *see also id.* at 271 (rejecting argument that parents enjoyed due process right to parental notification of their child's medical decision).[9]

The same analysis should apply here because the challenged Act is *permissive*[10] and does not compel, coerce, or prohibit any action by parents or children. Critically, the Act does not compel interference with the parent-child relationship; it merely authorizes a "mature minor" to receive certain vaccines without parental consent, to the extent that such minors choose to do so without discussing the matter with their parents. The Act does not prevent the child from informing her parents or prohibit parental involvement. Any effect that the Act may have on the parent-child relationship is incidental to the primary purpose of the statute. *See Ghadami v. D.H.S.*, Civil Action No. 19-00397, 2020 WL 1308376 at *11 (D.D.C. Mar. 19, 2020) (citing *al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 26 (D.D.C. 2010)) (rejecting due process challenge, reasoning "there is no

---

[9]     Plaintiff solely asserts a due process right to participate in his child's medical decisionmaking. *See* PI Mot. 23 ("A parent's right to control their child's medical care includes the authority to control the medication that their children receive."). He does not independently assert a right to parental notification of a mature minor's medical decisionmaking. That argument would fail in any event. As the Third Circuit has explained "parental notification has been permitted in limited circumstances in the context of abortion" but "has never been affirmatively required." *Anspach*, 503 F.3d at 271.

[10]     "[A]ll fifty states and the District of Columbia have laws requiring students to receive certain vaccines before they may attend school." *Klaassen v. Trustees of Ind. Univ.*, Civil Action No. 21-238, 2021 WL 3073926, *19 (N.D. Ind. July 18, 2021) (citing Nat'l Conf. of State Legislatures, *States with Religious and Philosophical Exemptions from School Immunization Requirements* (April 30, 2021), https://www.ncsl.org/research/health/school-immunization-exemptionstate-laws.aspx.). *See also* CDC, *Vaccination Laws* (same) (available at https://www.cdc.gov/phlp/publications/topic/vaccinationlaws.html) (accessed July 23, 2021). Here, in contrast, the Act does not *mandate* any behavior on the part of anyone.

constitutional protected liberty interest where the government's interference is indirect").[11] In other words, the Act contains no "form of constraint or compulsion" restricting or requiring action on the part of either parents or children; there is no "requirement [by the State] that the [children] of plaintiffs avail [themselves] of the services offered ... and no prohibition against the plaintiffs' participating in decisions of their minor [children] … . The plaintiffs remain free to exercise their traditional care, custody and control over their unemancipated children." *Anspach*, 503 F.3d at 267 (quoting *Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980)). Thus, there is no infringement. *Id.*

> **b.    The Act Is Narrowly Tailored To Support a Compelling Governmental Interest And Therefore Also Survives Rational Basis Review.**

Even assuming the Act infringes upon a fundamental right, he is not likely to succeed on his claim because the Act is narrowly tailored to serve a compelling governmental interest. *See Glucksberg*, 521 U.S. at 721.

The District has a compelling interest in stemming the spread of deadly communicable disease. *E.g., Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest … ."); *Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 353 (4th Cir. 2011) (finding "the state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest" and upholding vaccination requirement to attend school); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (state's interest in preventing spread of highly contagious and deadly disease is compelling).

There is no dispute that this interest was, in fact, the stated purpose of the D.C. Council in passing the Act. *See* Report on Bill 23-0171 at 2. The legislation that became the Act "was

---

[11]    *Cf.* 22B DCMR § 602.1 ("No physician, surgeon, dentist, or health or mental care facility shall be compelled against his, her, or its best judgment to treat a minor on the minor's own consent.").

introduced on the heels of a measles outbreak that spread across 11 states in 2019." Report on Bill 23-0171 at 2. The Act was "needed to grant minors, who are concerned for their health and safety, protection and the right to consent to a vaccination recommended by U.S. Advisory Committee on Immunization Practices (ACIP)," and "so that the District can move towards a high enough immunization rate to achieve herd immunity—or 95% immunity—from such diseases as measles." *Id*. "Non-immunized children are proven to pose a great risk to those they interact with on a daily basis, and with each vulnerable person they come into contact with, whether it be other children in school or family members, that risk grows exponentially." *Id*.[12] *See also*, *e.g.*, *Bruesewitz*, 562 U.S. at 227 ("[V]accines are effective in preventing outbreaks of disease only if a large percentage of the population is vaccinated.") (citing R. Merrill, *Introduction to Epidemiology* 65–68 (2010)); W.G. van Panhusi, *et al.*, "Contagious diseases in the United States from 1888 to the present." 369 N. Engl. J. Med. 21252–22158 (2013) (estimating that between 1924 and 2012, more than 100 million cases of serious diseases were prevented by childhood vaccines).[13]

Plaintiff does not even argue the District lacks a compelling interest. Pl.'s Mem. at 34. Plaintiff instead maintains that the Act is not narrowly tailored because the Act "indiscriminately

---

[12]     Minors who do not receive immunizations are more than 35 times more likely to contract measles and almost 6 times more likely to contract pertussis (whooping cough) than their immunized counterparts. D.A. Salmon *et al*., "Health consequences of religious and philosophical exemptions from immunization laws: individual and societal risk of measles." 282 *J. Am. Med. Ass'n* 47 (1999) (abstract available online at *https://pubmed.ncbi.nlm.nih.gov/10404911/* (accessed July 20, 2021); D.R. Feikin, *et al*., "Individual and Community Risks of Measles and Pertussis Associated With Personal Exemptions to Immunization." 284 *J. Am. Med. Ass'n* 3145 (2007) (abstract available online at *https://pubmed.ncbi.nlm.nih.gov/11135778/* (accessed July 20, 2021)).

[13]     The "possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases." *Jacobson*, 197 U.S. at 35.

appl[ies] the same rule to all parents." Pl.'s Mem. at 35. As an initial matter, that argument is incorrect because the Act does not apply to parents, but to minors whom a medical professional determines are capable of providing informed consent. 22-B DCMR § 600, 600.9(a). In any event, plaintiff's attempt to impugn the Act as overbroad fails. The critical inquiry with respect to narrow tailoring is the class of persons to whom the law applies, and in that respect the Act is narrowly tailored to promote the District's interest by providing criteria that the minor must meet to be considered capable of providing such consent. *Id*. at (b). The Act only applies to those minors who are "able to comprehend the need for, the nature of, and any significant risks ordinarily inherent in the medical care." *Id*. at (b). That requirement incorporates the "mature minor" doctrine that, as discussed, has long been recognized in the common law as an exception to the usual parental consent required for medical procedures. *E.g.*, *Kozup*, 851 F.2d at 439 (citing D.C. case from 1941).[14]

In sum, the Act is narrowly tailored to balance the District's compelling interest in preventing communicable disease, the interests of a select class of competent minors in protecting their own bodies from such disease, and the interests of parents in making those decisions for minors who are not capable of weighing the risks and benefits themselves. For all of these reasons, the Act also survives rational basis review as a reasonable public health measure rationally related to the District's interests. *See Gordon v. Holder*, 721 F.3d 638, 656 (D.C. Cir. 2013) (explaining that plaintiff must demonstrate "there is no rational relationship between [the Act] and some

---

[14]     Even more narrowly, the Act only applies to mature minors seeking a specific subset of vaccines, namely those "recommended by the [ACIP]" and "provided in accordance with ACIP's recommended immunization schedule." 22-B DCMR § 600.9 (a). *See* CDC, *Evidence-Based Recommendations*, available at *https://www.cdc.gov/vaccines/acip/recs/grade/about-grade.html* (accessed July 30, 2021) (describing AICP's evidence-based approach for vaccine recommendations).

legitimate governmental purpose") *Id.*; *cf. Jacobson*, 197 U.S. at 31 (holding Court should intervene only "if a statute purporting to have been enacted to protect the public health … has no real or substantial relation to those objects … .").

### 4.   Plaintiff Cannot Succeed on His Procedural Due Process Claim.

It is well-settled that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). However, procedural due process protections attach only when the plaintiff has alleged a cognizable liberty or property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Plaintiff argues that the Act deprives him of "his right to participate in the decision of whether to vaccinate J.D." without due process. Pl.'s Mem. at 32. As shown above, plaintiff has no such right, or liberty interest. Thus, because plaintiff has failed to allege the deprivation of a cognizable liberty interest, he fails to state a claim under the procedural component of due process.

Even if the Act infringed on a liberty interest, plaintiff has failed to demonstrate entitlement to additional procedures. *See Mathews*, 424 U.S. at 335 (outlining test for what process is due and requiring consideration of the value of the procedures proposed). Plaintiff asserts that "the state may only conduct or authorize medical procedures on a child without parental permission if either it receives a court order, or if it can show … emergency circumstances … ." Pl.'s Mem. at 32.[15] Not only is that statement legally unsupported, but plaintiff does not describe the nature of his envisioned court order, or what would be at issue in the proceeding. *Id.* at 31–33. He does not offer any facts or arguments to show that there is a risk of erroneous deprivation in the absence of this

---

[15]    Plaintiff cites only *Doe v. District of Columbia*, 796 F.3d 96, 103 (D.C. Cir. 2015) in support of this proposition. *Doe* is a case about a warrantless seizure of a child. *Id.* It does not support plaintiff's argument concerning consent for medical procedures in any way.

procedure, or the probable value of this procedure, nor does he consider the private and public interests at stake. *Id.*; *Mathews*, 424 U.S. at 335.

Plaintiff suggests that the Act is unconstitutional because it "does not attempt to guide or limit medical providers as to when it is appropriate to circumvent parental decision making nor does it limit which medical providers can choose to administer the vaccination." Pl.'s Mem. at 33. If this implies the additional argument that there should be judicial determination of when "to circumvent parental decision making," plaintiff still cannot succeed on this claim. As discussed above, the Act *does* expressly guide and limit medical providers' ability to circumvent parental decisionmaking:  providers may only administer vaccines to minors who can provide informed consent. 22-B DCMR § 600, 600.9(a), (b).

Moreover, the Act is not working from a blank slate. Medical providers in the District understand the meaning of informed consent because they have a well-established common law duty to obtain informed consent from *every* patient before performing medical procedures. *E.g.*, *Miller-McGee v. Washington Hosp. Ctr.*, 920 A.2d 430, 439–40 (D.C. 2007); *Iacangelo v. Georgetown Univ.*, 760 F. Supp. 2d 63, 65 (D.D.C. 2011). And providers in the District have similarly long experience determining when a minor is capable of providing informed consent, because District law has permitted them to provide services to a "minor of any age" who provides informed consent for "the prevention, diagnosis, and/or treatment" of pregnancy, substance abuse or psychological disturbance since 1974. *See* District Regulation No. 74-22 (Aug. 30, 1974), 1974 D.C. Stat. Reg. 290–92, *available at* https://tinyurl.com/4fx2rn5n; 22-B DCMR § 600, 600.7 (same, slightly expanded). Plaintiff offers no evidence or even allegations that medical providers have made bad decisions despite more than 50 years' experience to draw upon. There is,

consequently, no reason to believe that a judicial determination as to competence or consent would make any difference. Plaintiff cannot succeed on this claim.

> ### 5. Plaintiff Cannot Succeed on His RFRA Claim Because Enforcement of the Act Is Not a Substantial Burden on Plaintiff's Religious Conduct.

Plaintiff argues that the Act violates RFRA because it substantially burdens his exercise of religion. Pl.'s Mem. at 35–37. Plaintiff's assertion is meritless. The District has not pressured or compelled plaintiff to violate his religious beliefs or engage in any activity at all, much less activity that his religion forbids. And without showing a substantial burden on plaintiff's religious conduct, plaintiff cannot succeed on his RFRA claim.

RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless it can demonstrate the application of the burden:  "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b).12.[16] But plaintiff does not show that the Act substantially burdens his exercise of religion and, even if plaintiff could, the ordinance furthers a compelling government interest while using the least restrictive means to do so.

To demonstrate a substantial burden on their religious exercise, plaintiff would have to show that the District "put[ ] 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981)). "RFRA decisions turn on an element of compulsion," *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 281 F. Supp. 3d 88, 114 (D.D.C. 2017),

---

[16]    Although the Supreme Court struck down the portion of RFRA regulating state and local governments, *City of Boerne v. Flores*, 521 U.S. 507 (1997), RFRA remains applicable to the District as a "covered" federal entity. *See* 42 U.S.C. § 2000bb-2(1)-(2); *Potter v. Dist. of Columbia*, 558 F.3d 542, 546 (D.C. Cir. 2009).

*aff'd*, 897 F.3d 314 (D.C. Cir. 2018), and the element of compulsion required to establish a substantial burden under RFRA is not present here.

The Act does not compel plaintiff to do anything that conflicts with his religious beliefs; the Act merely creates the potential for a mature minor child to participate in an activity that her parent may find religiously objectionable. *See* Background; Pl.'s Mem. at 35–37. This distinction is crucial under the law and fatal to plaintiff's RFRA claim. To find that a state substantially burdens a parent's religious exercise, courts have determined that the state must be "either requiring or prohibiting some activity." *Doe*, 615 F.2d at 1168 (collecting cases); *see, e.g.*, *Wisconsin v. Yoder,* 406 U.S. 205, 218 (1972) (finding a substantial burden when a compulsory education law compelled the Amish to "perform acts undeniably at odds with fundamental tenets of their religious beliefs"). On the other hand, courts have found that *allowing* a child to participate in an activity the parent finds religiously objectionable does not constitute a substantial burden under RFRA. *See Doe*, 615 F.2d at 1168 (finding no substantial burden when the state established a voluntary birth control clinic where minors could obtain services without parental notification or consent.); *Anspach*, 503 F.3d at 274 (finding no substantial burden where the city allowed minors to receive emergency contraception without parental permission). This case squarely falls into the second category. "Religious exercise necessarily involves an action or practice," and government activity that conflicts with an individual's religious beliefs but does not require him to modify his behavior does not constitute a substantial burden under RFRA. *Kaemmerling*, 553 F.3d at 679. Plaintiff has failed to identify any religious exercise that would have to be modified to conform with the Act, and the Act's creation of a *voluntary* mechanism for minors to obtain vaccines in limited circumstances does not substantially burden plaintiff's religious exercise.

Moreover, the religious exercise underlying plaintiff's substantial burden argument is overly broad, vague, and too attenuated to the Act to constitute a substantial burden under RFRA. *See Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 360–62 (3d Cir. 2017) (finding that "the possibility that others might avail themselves of services that the employees find objectionable" when employees had the choice of whether to participate in the objectionable program was too attenuated to constitute a substantial burden under RFRA) (emphasis in original); *Fernandez v. Mukasey*, 520 F.3d 965, 966 (9th Cir. 2008) (*per curiam*) (finding no RFRA violation when "the connection between [the statutory requirement and their religious exercise] is too attenuated to create a substantial burden on petitioners' religious exercise."). Importantly, plaintiff does *not* claim that his religious beliefs prohibit vaccinations (for plaintiff or his minor child); rather, plaintiff only alleges that "his religion prohibits him from permitting acts that he believes would harm his child." Pl.'s Mem. at 23. In other words, plaintiff argues that it is impermissible for the government to merely facilitate children's participation in activities that plaintiff believes could harm *his* child *if* his child participated. But "the law distinguishes between direct participation and remote facilitation, treating the former as compelling and the latter as negligible." *Real Alternatives, Inc.*, 867 F.3d at 361. Indeed, plaintiff's reading such a broad definition of "substantial burden" into RFRA defies common sense. It would follow that plaintiff could require the government to satisfy strict scrutiny to justify its otherwise lawful actions concerning any number of potential harms, from skateboards to sodas. And a state's "authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience." *Yoder*, 321 U.S. at 166. Thus, plaintiff has failed to allege that the Act substantially burdens his religious exercise.

The sincerity of plaintiff's belief that he should prevent harm from befalling his child is not in dispute. But plaintiff's characterization that the potential for his child to receive a vaccine against his wishes is a "substantial burden," *see* Pl.'s Mem. at 35, is a "legal conclusion, cast as a factual allegation," which does not provide "facts sufficient to state a substantial burden," *Kaemmerling*, 553 F.3d at 679. In other words, "the existence of [a] belief, and even the sincere desire to act in accordance with it, is not enough to sustain a [RFRA] claim." *Archdiocese of Wash.*, 281 F. Supp. 3d at 114. Indeed, "to make religious motivation the critical focus is ... to read out of RFRA the condition that only substantial burdens on the exercise of religion trigger the compelling interest requirement." *Id*. at 114. Instead, the substantial burden inquiry should focus on whether the regulation at issue "force[d] [plaintiffs] to engage in conduct that their religion forbids or ... prevents them from engaging in conduct their religion requires." *Henderson v. Kennedy*, 253 F.3d 12, 16 (D.C. Cir. 2001). In using the approach, the D.C. Circuit Court cautioned against "expanding [the] RFRA's coverage beyond what Congress intended … [by] reduc[ing RFRA claims] into questions of fact, proven by the credibility of the claimant." *Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011). Here, the Court may acknowledge the sincerity of plaintiff's belief that "his religion prohibits him from permitting acts that he believes would harm his child," Pl.'s Mem. at 23, but that is not sufficient, alone, to state a substantial burden under RFRA.

Even if plaintiff had shown the Act imposes a substantial burden on his exercise of religion, the Act furthers a compelling government interest with the least restrictive means, as discussed above, satisfying the RFRA exception. *See* Section II(B)(3)(b); 42 U.S.C. § 2000bb-1(b).

> **6.     Plaintiff Cannot Succeed on His Claim Under the Free Exercise Clause Because the Act Has Not Imposed a Substantial Burden on Plaintiff's Religious Exercise.**

Plaintiff claims that the Act violates the First Amendment's Free Exercise Clause, but he fails to plead the necessary elements in his Complaint or provide any supporting argument in his

32

motion. *See* Compl. ¶¶ 93–99. To the extent that plaintiff's citation to *Yoder* is intended to show that the Act is subject to heightened scrutiny because "the interests of parenthood are combined with a free exercise claim," no such hybrid rights are implicated here. *See* Pl.'s Mem. at 36 (quoting *Yoder*, 406 U.S. at 233). For the reasons stated in Section II(B)(3)(a), plaintiff cannot establish a due process right implicating the "interests of parenthood" and, as described in Section II(B)(5), plaintiff has not shown that the Act substantially burdens his religious exercise, which is a threshold requirement of a free exercise claim. *See Levitan v. Ashcroft*, 281 F.3d 1313, 1320 (D.C. Cir. 2002) (finding that plaintiffs must make a "threshold showing" that "a law or regulation imposes a substantial, as opposed to inconsequential, burden on the litigant's religious practice" before the Free Exercise clause is implicated). Thus, plaintiff has failed to state a claim under either of those theories, and he cannot succeed on a hybrid free exercise claim. *See Archdiocese of Wash.*, 897 F.3d at 331 (quoting *Henderson*, 253 F.3d at 19) (finding appellant's hybrid rights claim fails "because it requires independently viable free speech and free exercise claims, and 'in law as in mathematics zero plus zero equals zero'").

C.   **Plaintiff Will Not Suffer Irreparable Harm Absent Relief Because He Has Not Shown He Is Likely To Suffer any Injury.**

"Plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[P]roving irreparable injury is a considerable burden, requiring proof that the movant's injury is certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (internal citations and quotation marks omitted); *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (same); *Manzanita Band of Kumeyaay Nation v. Wolf*, 496 F. Supp. 3d 257, 260 (D.D.C. 2020) (same). If a party fails to make a sufficient showing, a court may deny a

motion for preliminary relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

Here, plaintiff has not made a sufficient showing of an imminent injury to satisfy the irreparable harm prong. Though plaintiff notes that the "loss of constitutional freedoms ... unquestionably constitutes irreparable injury," *see* Pl.'s Mem at 37 (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)), the mere "possibility" of a constitutional harm is not sufficient to satisfy a plaintiff's burden of showing that irreparable harm would occur absent a preliminary injunction, *Winter*, 555 U.S. at 21. Plaintiff has not met this burden; as discussed above, plaintiff has not shown that he is likely to succeed on any of his claims. *See* Section II(B).

Indeed, plaintiff fails to identify any harm that results from the Act, let alone a harm that is likely to occur. As also discussed above, plaintiff only alleges that it is *possible* for his daughter to receive a vaccination against his wishes; plaintiff does not state that such an occurrence is imminent or even *likely* to occur. *See* Section I. Courts regularly deny claims for emergency relief when a party fails to provide evidence that the alleged harm will materialize. *See*, *e.g.*, *Bin Lep v. Trump*, Civil Action No. 20-3344, 2020 WL 7340059, *12 (D.D.C. Dec. 14, 2020) (motion for preliminary injunction denied when plaintiff had "no concrete proof" that the harm alleged would occur) (citing *Davis v. Billington*, 76 F. Supp. 3d 59, 65 (D.D.C. 2014)); *Pan Am Flight 73 Liaison Grp. v. Davé*, 711 F. Supp. 2d 13, 32 (D.D.C. 2010) ("Irreparable harm ... cannot rest on mere possibilities."); *Reinhard v. Johnson*, 209 F. Supp. 3d 207, 220 (D.D.C. 2016) (finding that "claim is speculative and not supported by any facts").

Moreover, as plaintiff acknowledges, the Act became effective over four months ago, and he learned of his daughter's alleged attempt to obtain vaccines three months ago. *See* Compl. ¶ 39; 68 D.C. Reg. 4172 (Apr. 23, 2021); Mazer Decl. [4-3] ¶ 8. Plaintiff's delay in seeking "emergency"

relief weighs against the grant of an injunction. *See*, *e.g.*, *Salazar v. District of Columbia*, 671 F.3d 1258, 1266 (D.C. Cir. 2012) (citing *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (a "'period of delay'" may "'indicate an absence of the kind of irreparable harm required to support a preliminary injunction'")); *Public Citizen Research Group v. Acosta*, 363 F. Supp. 3d 1, 22 (D.D.C. 2018) ("[P]laintiffs waited over three months … to seek preliminary relief. Such delay, though perhaps not dispositive, strongly discredits Plaintiffs' claim that they are suffering irreparable harm[.]") (citing, among others, *Air Transp. Ass'n of Am., Inc. v. Export-Import Bank of the U.S.*, 840 F. Supp. 2d 327, 338 (D.D.C. 2012) ("Plaintiffs' delay in seeking relief … weighs against a finding of irreparable harm.")).

Thus, plaintiff fails to identify any imminent, irreparable harm that results from the mere existence of the Act, and he has not carried his "considerable burden" to show irreparable harm.

### D.     The Balance of the Equities and the Public Interest Weigh in Favor of the District.

Even if a movant demonstrates a likelihood of success and irreparable injury, the Court still must balance the equities between the parties and consider the public interest. *Open Tech. Fund v. Pack*, 470 F. Supp. 3d 8, 31 (D.D.C. 2020). Those two factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

Plaintiff only argues that he will be harmed by the Act "because his fundamental liberty right to parent will be curtailed." Pl.'s Mem. at 39. But for the reasons described above, *see* Section II(B)(3)(a), there is no such right at stake here. Plaintiff identifies no other harm that will befall him absent an injunction, nor could he. The Act has no bearing on his rights and he has failed to identify any injury.

In contrast, the District has a compelling interest in maintaining the Act. *See* Section II(B)(3)(b); *see also id*. at (c). As discussed above, the Council passed the Act in response to

observing outbreaks of preventable diseases in other jurisdictions to ensure that the District could

meet the high threshold for herd immunity (95% of the community immunized) to prevent such an

outbreak in the District. *See* Background. By enacting the Act, the District exercised its "right to

protect itself against … disease[s] which threate[n] the safety of its members." *Jacobson*, 197 U.S.

at 27. Courts should hesitate to engage in "second-guessing" to prevent elected representatives

from taking the appropriate steps to protect the public health; "an 'unelected federal judiciary,' …

lacks the background, competence, and expertise to assess public health and is not accountable to

the people." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020) (Roberts,

C.J., concurring); *see also Gonzales v. Carhart*, 550 U.S. 124, 163 (2007) ("[S]tate and federal

legislatures [enjoy] wide discretion to pass legislation in areas where there is medical and scientific

uncertainty.") (citing *Jacobson*, 197 U.S. at 30–31); *Zucht v. King*, 260 U.S. 174, 176 (1922) ("[A]

municipality may vest in its officials broad discretion in matters affecting the application and

enforcement of a health law"). "[A court] may presume, absent a showing to the contrary, that [a

government] acts in the public interest." *Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S.

492, 501 (1988) (quoting *Hallie v. Eau Claire*, 471 U.S. 34, 45 (1985)). Here, the public interest

and balance of the equities weighs heavily in favor of the District.

## III.     The District Is Entitled to Dismissal on All Claims Under Rule 12(b)(6).

For the reasons discussed above, even if plaintiff has standing, plaintiff's claims are

meritless and he is not entitled to any relief. Plaintiff not only fails to satisfy the standard for

obtaining a preliminary injunction, he also fails to state a claim upon which relief can be granted.

*See* Fed. R. Civ. P. 12(b)(6). Even if the Court accepts as true plaintiff's factual allegations,

plaintiff has not pled sufficient facts to "allow[] the court to draw [a] reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

at 556). Here, as discussed above, plaintiff fails to provide any plausible allegations that could support his claims under the Supremacy Clause, Due Process Clause, RFRA, and the First Amendment. Thus, plaintiff fails to state a claim for relief, and the District is entitled to dismissal on all claims in the Complaint.[17]

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's motion for preliminary injunction and grant the District's motion to dismiss plaintiff's Complaint with prejudice.

Dated:  July 30, 2021.                           Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Acting Deputy Attorney General
Public Interest Division

/s/ Andrew J. Saindon
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
PAMELA DISNEY [1601225]
MATEYA B. KELLEY [888219451]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W.
Suite 10100
Washington, D.C. 20001
(202) 724-6643
andy.saindon@dc.gov

---

[17]     If the Court finds plaintiff has standing and has stated a claim, it should nonetheless dismiss plaintiff's Section 1983 claims against the individual defendants because an "official-capacity suit is, in all respects other than name, to be treated as a suit against the [municipal] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There are no allegations in plaintiff's Complaint suggesting individual-capacity claims. "D.C. Courts routinely dismiss claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Proctor v. District of Columbia*, Civil Action No. 18-00701, 2018 WL 6181739, at *5 (D.D.C. Nov. 27, 2018) (internal quotation marks omitted). Plaintiff's redundant claims should be dismissed.